**ESTATE OF Edward F. PIPE, Deceased, Nettie M. Pipe, Executrix, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 89, Docket 23748.

United States Court of Appeals Second Circuit.

Argued Dec. 11, 1956.

Decided Feb. 7, 1957.

Swan, Circuit Judge, dissented.

Edmund W. Pavenstedt, New York City (Russell D. Morrill, White & Case, New York City, of counsel), for petitioner-appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Hilbert P. Zarky, Marvin W. Weinstein, Attys., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Edward F. Pipe deceased on September 20, 1948 domiciled in the State of New York. He was survived by his widow, Nettie M. Pipe, who became executrix of his estate. The executrix petitions us, pursuant to sections 7482 and 7483 of the 1954 Internal Revenue Code, 26 U.S.C.A. §§ 7482, 7483, to review a Tax Court decision reported in 1955, 23 T.C. 99. This decision holds that the decedent's estate tax was overpaid in the amount of $114.76, but since the Tax Court took into account a sum of $19,310.29 deposited by taxpayer solely to stop the running of interest, the determination actually was a finding of an estate tax deficiency in the amount of $19,195.53. This deficiency results from the denial by the Commissioner of a deduction of $141,473.55 claimed under section 812(e) of the Internal Revenue Code of 1939, as amended in 1948, 26 U.S.C.A. § 812(e). The deduction was sought with respect to a bequest by decedent to his surviving spouse of a legal life estate in personalty that had been valued for federal estate tax purposes at $217,429.84, coupled with unlimited powers in the widow to invade during her lifetime, but with remainders over to named legatees as to any residue left at her death.

The pertinent provisions of the will are as follows:

"Third: All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situated, hereinafter referred to as my 'residuary estate,' I give, devise and bequeath to my wife, Nettie M. Pipe, to have and to hold the same for the term of her natural life, with full power to use, enjoy, sell or dispose of the income and principal thereof, or any part thereof for such purposes or in such manner, as she in her uncontrolled discretion may choose, it being my desire to place no restraint on her in any respect concerning the absolute right of full disposition and use of the whole or any part of said income or principal of my residuary estate, except that she shall have no power over the disposition of such part thereof as remains unexpended at the time of her death.

"I direct that my said wife shall not be required to file any bond or other security for the protection of any remainderman interested in my said residuary estate, and she shall

not be limited in investing and re-investing the same to securities of the kind authorized by law for the investment of trust funds. During the life of my said wife, any stocks, bonds or other securities may be registered in the name of my said wife alone as if she were the absolute owner of such property, and no one dealing with her with respect to my residuary estate shall be responsible for the application of any proceeds of sale or other disposition of property.

"Fourth: On the death of my said wife * * * I give and bequeath all * * * of the property which can be identified at my wife's death as a part of my residuary estate * * * absolutely, to [certain named legatees]."

### I

The appellant's first principal contention is that this bequest qualifies for the so-called marital deduction under subsection 812(e) (1) (A) of the 1939 Code inasmuch as the life tenancy it creates is equivalent to absolute ownership of the principal of the bequest. Appellant relies on section 149 of the New York Real Property Law, McKinney's Consol. Laws, c. 50, which is also applicable to personal property. In re Dean's Estate, 1938, 166 Misc. 499, 2 N.Y.S.2d 757. Section 149 provides:

"Where an absolute power of disposition, not accompanied by a trust, is given to the owner of a particular estate for life or for years, such estate is changed into a fee absolute in respect to the rights of creditors, purchasers and incumbrancers, but subject to any future estates limited thereon, in case the power of absolute disposition is not executed, and the property is not sold for the satisfaction of debts."

It is argued that under the law of New York this particular bequest created a fee absolute interest in the widow. and that New York law determines the legal characterization of the bequest because the testator died domiciled in New York.

■■ The appellant argues that the person who has a fee in respect to the rights of his creditors under section 149 has a fee for all practical purposes. This position is untenable, however, because one of the most significant elements of absolute ownership is the power of the owner to determine to whom the property shall pass upon his death. Section 149 specifically protects the interests of remaindermen limited after a life tenancy in the event the life tenant does not fully dispose of the property *during his lifetime.* Since Mrs. Pipe cannot make a testamentary disposition of any part of this estate, her interest is not converted into a fee simple absolute by section 149.[1] Terry v. Wiggins, 1872, 47 N.Y. 512; In re Alimann's Will, Sur., 1953, 128 N.Y.S.2d 204.

### II

The appellant's second main contention is that this bequest, if it does not convey a fee simple absolute, qualifies for the marital deduction under subsection 812(e) (1) (F), which provides:

"*Trust with power of appointment in surviving spouse.* In the case of an interest in property passing from the decedent in trust, if under the terms of the trust the surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any

---

1. Nor does § 149 change the estate given to a grantee with a power of disposition during lifetime into a fee absolute for purposes of New York state taxes. In re Sonnenburg's Estate, 1928, 133 Misc. 42, 231 N.Y.S. 191.

part of the corpus to any person other than the surviving spouse—

"(i) the interest so passing shall, for the purposes of subparagraph (A), be considered as passing to the surviving spouse, and

"(ii) no part of the interest so passing shall, for the purposes of subparagraph (B) (i), be considered as passing to any person other than the surviving spouse.

"This subparagraph shall be applicable only if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

The appellant argues that this subsection was intended to embrace not only express trusts but also those bequests that are treated as trusts under the applicable state law, here the local law of New York. Reference is made to a number of New York cases holding that a legal life tenant, even if vested with an unqualified power to invade and consume the corpus during his lifetime, holds the principal of his estate in trust as a "trustee" for the named remaindermen.[2] But since subsection 812(e) (1) (F) also requires that the trust be coupled with a power of appointment, appellant cannot rest on these cases alone. It is necessary, in addition, to equate Mrs. Pipe's power to invade and consume the principal with a general power of appointment, as that term is used in the 1939 Code. Apparent support for the proposition that the equivalent of such a power is present here can be found in U. S. Treasury Regulation 105, § 81.24,[3] which defines a power of appointment in the following manner:

"The term 'power of appointment' includes all powers which are in substance and effect powers of appointment regardless of the nomen-

clature used in creating the power and regardless of local property law connotations. For example, if a transfer in trust provides that the beneficiary may appropriate or consume the principal of the trust, such power to consume or appropriate is a power of appointment."

But even assuming, *arguendo*, that the bequest at bar did create a "trust" under the law of New York that would comply with the minimal requirements of subsection 812(e) (1) (F), we must hold that it does not qualify for the marital deduction under that section. We cannot do otherwise, for a reading of this statutory provision and its apposite Treasury Regulations in their entirety makes it clear that Mrs. Pipe's power to invade and consume is not the type of "unlimited power to invade" referred to in the Regulations. See U. S. Treas. Reg. 105, § 81.47a. *During her lifetime* no restraint whatsoever is imposed upon her power to consume or dispose of the principal of her life estate as she wishes. She has a power to *consume*, but she may not devise or bequeath any unconsumed corpus at her death to beneficiaries of her own choice. Thus her power under the terms of Mr. Pipe's will is not the "unlimited power to invade" referred to in the Regulations, because to comply with that requirement, the "power in the surviving spouse must be a power to appoint the corpus to herself as unqualified owner or to appoint the corpus as a part of her estate, that is, in effect, to dispose of it to whomsoever she pleases." U. S. Treas. Reg. 105, § 81.47a. Or, in the language of the statute itself, the surviving spouse must be able to appoint the entire corpus "free of the trust" to herself or her estate. This Mrs. Pipe cannot do, because as long as any of the corpus of her estate remains, it will be held "in trust" for the named remaindermen.[4]

---

2. E. g., Keefe v. Keefe, 1931, 257 N.Y. 604, 178 N.E. 814; Peck v. Smith, 1919, 227 N.Y. 228, 125 N.E. 91; Seaward v. Davis, 1910, 198 N.Y. 415, 92 N.E. 1107.

3. See also Estate of Ellis, 1956, 26 T.C. 694.

4. Estate of Ellis, 1956, 26 T.C. 694, where the decedent died domiciled in Pennsyl-

### III

Lastly, the appellant argues that the disallowance of a deduction for this bequest would frustrate the clear intent of Congress in enacting the marital deduction provisions in 1948. Citing extensive legislative history, e.g., S.Rep. No. 1013, 80th Cong., 2d Sess. (1948), the appellant points out that Congress sought a general uniformity of tax treatment of decedents' estates in both community property and common law states.[5] The method adopted, in general, was to permit a deduction from the gross estate of the spouse who first deceased for the value of property that would be included, if not consumed, in the gross estate of the surviving spouse, thereby subjecting the value of that property so deducted to only one estate tax, which would be exacted at the survivor's death. Mrs. Pipe argues that the unconsumed principal of her life estate will be included in her gross estate for federal tax purposes because of her unqualified power to invade the corpus during her lifetime. It is not necessary for us, however, to determine the validity of this contention, because the possibility of double taxation is not a sufficient basis for allowing a marital deduction if the bequest does not comply with the specific statutory requirements of section 812(e). Starrett v. Commissioner, 1 Cir., 1955, 223 F.2d 163. Cf. Estate of Shedd v. Commissioner, 9 Cir., 1956, 237 F.2d 345; Estate of Hoffenberg v. Commissioner, 1954, 22 T.C. 1185, affirmed per curiam, 2 Cir., 1955, 223 F.2d 470. Here the appellant has failed to prove that this bequest falls within any of the express provisions for marital deductions under the 1939 Code.

Affirmed.

SWAN, Circuit Judge (dissenting).

Nearly a century ago the Supreme Court speaking through Chief Justice Taney, declared in United States v. Boisdore's Heirs, 8 How. 113, 121, 12 L.Ed. 1009: "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." This was quoted with approval as recently as February 1956 in Mastro Plastics Corp. v. National Labor Relations Board, 350 U.S. 270, 285, 76 S.Ct. 349, 100 L.Ed. 309, which in turn was quoted on this point in National Labor Relations Board v. Lion Oil Co., Jan. 22, 1957, 77 S.Ct. 330. The object and policy of the marital deduction provisions of section 812(e) are, as stated in Estate of Ellis, 26 T.C. 694, "to remove as far as possible the discrimination with respect to estate taxes between decedents of community property states and those of non-community property states." One of the provisions enacted to accomplish this object was section 812(e) (1) (F) quoted in the majority opinion. In discussing this subparagraph, the Senate Finance Committee Report stated:

"These provisions have the effect of allowing a marital deduction with respect to the value of property transferred in trust by or at the direction of the decedent, *where the surviving spouse, by reason of her right to the income and a power of appointment, is virtually the owner of the property.* This provision is designed to allow the marital deduction for such cases *where the value of the property over which the surviving spouse has a power of appointment will (if not consumed) be subject to either the estate tax or*

---

vania, although distinguishable from the case at bar because it dealt with an express trust, asserts a position as to the meaning of "an unlimited power to invade" inconsistent with that here adopted. To the extent that the two decisions are irreconcilable, we approve the analysis set forth in the dissent in The Ellis case.

5. See also Hamrick v. Pitts, D.C.W.D.S.C., 135 F.Supp. 835, 837, affirmed 4 Cir., 1955, 228 F.2d 486; Weyenberg v. United States, D.C.E.D.Wis.1955, 135 F.Supp. 299, 301.

*the gift tax in the case of such surviving spouse."* [Italics added.][1] Bearing in mind the canon of construction approved by the Supreme Court in the cases cited above, I think subparagraph (F) should not be interpreted so literally as to preclude the marital deduction, where, as in the present case, the widow has a life interest in the deceased husband's residuary estate, an unlimited power to appoint the principal to herself, and is by local New York law constituted a trustee for the remaindermen of unconsumed principal.[2]

In Estate of Ellis, supra, decided subsequently to the case at bar, the decedent's will left the residue of his estate in trust, all income payable to his widow for life. The widow also received the power to invade corpus if she should so require, she to be the sole judge as to how much she should require. At her death principal remaining was payable one-half to her estate and one-half to their children. The Tax Court held that the bequest qualified for the marital deduction under section 812(e) (1) (F). In reaching this conclusion the court interpreted the will as giving the widow an unlimited power to consume the corpus. Mrs. Pipe as life tenant was given equal power. The court also accepted as correct the petitioner's contention that the value of any part of the trust corpus unconsumed at the widow's death would be includible as a part of her estate for purposes of the estate tax. In Estate of Pipe the petitioner makes the same contention. The court further held that Mrs. Ellis by reason of her unlimited power to invade and consume principal could exhaust the trust corpus "and thereby destroy the remainders." This is equally true of Mrs. Pipe.

The majority opinion in Estate of Ellis attempts to distinguish Estate of Pipe on two grounds neither of which do I find persuasive. It says, first, that in Estate of Pipe the devise was *"direct,* and not in trust," of a legal life estate to the surviving spouse, and "Section 812(e) (1) (F) is clearly limited to trusts." This seems a purely formal distinction and inconsistent with the purpose of the statute.[3] As already noted the two widows had precisely the same powers to invade the corpus, and by consuming the entire corpus to destroy the remainders. And any unconsumed corpus at the widow's death would be treated as part of her estate for estate tax purposes.

The second suggested distinction is that Estate of Pipe held, without actually passing on the petitioner's contention that a trust existed, "that even if there was such a trust, it would apply only to principal remaining unconsumed at death of the life tenant, and that the principal of such a 'trust' is too indefinite to permit us to assign any value thereto for purposes of the marital deduction." But precisely the same objection existed in the case of the formal trust created by the will of Mr. Ellis. At the time of his death no one could

---

1. Sen.Rep. 1013, 80th Cong., 2d Sess., Part 2, p. 16 (1948); 1948–1 Cum.Bull. 285, 242.

2. In Weyenberg v. United States, D.C.E.D. Wis., 135 F.Supp. 299 at page 301, the court said, after stating that the purpose of the marital deduction provisions was to equalize the federal estate tax between citizens of common law states and citizens of community property states, "The method of equalization was to some extent left up to the individual states."

3. It is expressly rejected in section 2056 (b) (5) of the 1954 Code, 26 U.S.C.A. § 2056(b) (5), as to decedents dying after August 16, 1954. See also Senate Rep. No. 1622, 83rd Cong., 2d Sess., Part 2, 125 (1954):

"A marital deduction is allowed in computing the taxable estate under present law for the value of property passing from one spouse to the other, if the surviving spouse has a right to the income from all of the property and has a general power of appointment over all of it. However, present law requires in such cases that the property be placed in 'trust' and *because of doubt under the law of the various States as to what constitutes a 'trust' it is not clear when a legal life estate will qualify as a trust."* [Italics added.]

**216**

foretell how much, if anything, would be left of the corpus of the trust at the death of Mrs. Ellis. If such indefiniteness does not prevent a formal trust from qualifying for the marital deduction, I see no reason why it should not be equally immaterial in the present case.

Judge Opper, who wrote the Pipe Estate opinion found it difficult to reconcile that decision with Estate of Ellis and dissented in the latter case. My brothers agree with his dissent rather than with the majority. I am unable to do so. In my opinion the marital deduction in the case at bar should be allowed under § 812(e) (1) (F).