Frank L. **WEYENBERG** and The First Wisconsin Trust Company, a Wisconsin corporation, as co-trustees u/w Sylvester A. Weyenberg, Deceased, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

Civ. A. No. 6141.

United States District Court
E. D. Wisconsin.
Oct. 27, 1955.

John S. Best and Roy C. LaBudde, Milwaukee, Wis., for plaintiffs.

Edward G. Minor, U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This is a suit for refund of Federal estate taxes paid by plaintiffs as co-executors of the will of Sylvester A. Weyenberg, deceased. Most of the facts were stipulated by the parties for trial before the Court.

The decedent died on June 29, 1949, in Waukesha County, Wisconsin. He left surviving him a widow and two sons. The widow was not the mother of the sons, one of whom was a minor and the other an incompetent during the period here material.

The will admitted to probate contained no provision for the surviving widow. Under Wisconsin Statutes, § 233.14, the widow elected to take a statutory one-third share of her husband's net personal estate. In the proceedings had before the County Court the widow was represented by an attorney as were the co-executors, and the two sons were represented by a guardian ad litem who was an attorney. By an order dated May 16, 1950, the County Court of Waukesha County, Wisconsin, determined the widow's share to be one-third of the estate unreduced by Federal estate taxes. That portion of the estate assigned to the widow was actually distributed to her by the executors. No appeal or other proceeding for review of the final decree was commenced within the time limited by Wisconsin law for an appeal.

The plaintiffs as executors filed a Federal estate tax return based on two-thirds of the decedent's residuary estate. The Commissioner of Internal Revenue determined that there was a deficiency in the Federal estate tax return of $2,530.50 due to the fact that the County Court had not reduced the widow's share of the estate by Federal estate taxes before distributing such share to the widow. The executors paid the deficiency and now sue for a refund of $7,486.05.

In the proceeding before the County Court, the question of whether the widow's one-third share of the net personal estate of the deceased should be determined before or after the impact of Federal estate taxes was never discussed with the County Judge either in open court or in chambers. However, the guardian ad litem testified that he understood the duties of a guardian ad litem; that he understood that his wards' interests were adverse to those of the widow; that he understood that there was an issue as to who was to bear the impact of the Federal estate tax; that that issue was raised and discussed in conferences between himself and the attorneys

for the widow and the executors before the final decree; that the amount of the shares to be distributed was also discussed in those conferences; that the law concerning the impact of Federal taxation on the marital deduction was presumed to be fairly clear and he was satisfied that the conclusion reached among the attorneys was the law; that he knew he had an obligation to raise an objection before the court if such conclusion were not correct; and that he knew that the Federal estate tax would be borne by his wards.

The question presented to the Court in this case is whether the decree of the County Court giving the widow an amount equal to one-third of the residuary estate unreduced by Federal estate taxes is to be given conclusive effect taxwise by the Federal taxing authorities.

The statute under construction is Section 812 of Title 26 U.S.C.A., which provides:

> "For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—
>
> \*   \*   \*   \*   \*   \*
>
> "(e) Bequests, etc., to surviving spouse
>
> "(1) Allowance of marital deduction
>
> "(A) In general. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.
>
> \*   \*   \*   \*   \*   \*
>
> "(E) Valuation of interest passing to surviving spouse. In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—

> "(i) there shall be taken into account the effect which a tax imposed by this chapter, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of such interest;
>
> \*   \*   \*."

Regulation 105, Section 81.47c contains the following explanatory information concerning 812(e):

> "(c) *Effect of Death Taxes.* Section 812(e) (1) (E) provides that in the determination of the value of any property interest which passed from the decedent to his surviving spouse, there shall be taken into account the effect which the federal estate tax, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of such property interest.
>
> \*   \*   \*   \*   \*   \*
>
> "If the decedent bequeaths his residuary estate, or a portion thereof, to his surviving spouse, and his will contains a direction that all death taxes shall be payable out of such residuary estate, the value of the bequest, for the purpose of the marital deduction, is based upon the amount of the residue as reduced pursuant to such direction. If the residuary estate, or a portion thereof, is bequeathed to the surviving spouse, and by the local law the federal estate tax is payable out of the residuary estate, the value of the bequest, for the purpose of the marital deduction, may not exceed the amount thereof as reduced by the federal estate tax."

■■ There can be little doubt that the purpose of the marital deduction provision of 26 U.S.C.A. § 812 was to equalize the Federal estate tax between citizens of common law states and citizens of community property states. The method of equalization was to some extent left up to the individual states. Hamrick v. Pitts, D.C., 135 F.Supp. 835.

"Congress expressly left the question of whether a spouse's share

\* \* \* qualifying for marital deduction should be subject to federal estate tax, to the individual states to determine for themselves." In re Will of Uihlein, infra [264 Wis. 362, 59 N.W.2d 646].

As a result, different results were arrived at in different states. Several courts have held that because the marital deduction relieves the widow's share of Federal estate taxes up to one-half of the taxable estate, her share should not be charged with any part of that tax. Lincoln National Bank & Trust Co. v. Huber, Ky., 240 S.W.2d 89; Miller v. Hammond, 156 Ohio St. 475, 104 N.E.2d 9; See also In re Peter's Will, 204 Misc. 333, 88 N.Y.S.2d 142. Other states have reached the opposite conclusion. Wachovia Bank & Trust Co. v. Green, 236 N.C. 654, 73 S.E.2d 879; Northern Trust Co. v. Wilson, 344 Ill.App. 508, 101 N.E. 2d 604.

The Wisconsin Supreme Court in 1953 settled the question for Wisconsin of the impact of Federal estate taxes in Re Will of Uihlein, 264 Wis. 362, 59 N.W.2d 641, 38 A.L.R.2d 961. The court held that the words "net estate" in Wisconsin Statutes, § 233.14 under which the widow took one-third of her husband's estate meant that part of the estate which remained after payment of all charges against the estate including Federal taxes. Federal taxes, it said, fell into the same category as debts chargeable to the estate.

■ We feel that the Uihlein decision, which settled the law in Wisconsin in 1953, does not govern the result taxwise under the facts of this case. The decision of the County Probate Court has become final. We cannot now sit as an appellate court to change the result of that decision. The state, through its courts, determines the property rights of its citizens in probate proceedings. The Federal estate tax law hinges on the determination of those rights. Here the County Court passed a full one-third share of the decedent's estate to the widow without making allowance for Federal estate taxes. That amount did

pass irrevocably to the widow and cannot now be tampered with. What the County Court should have done in the light of the Uihlein case has become a moot issue. The widow's share qualified for the marital deduction and should so be treated.

It was strongly urged by the defendant that this Court is not bound by the decision of the County Court because of Brainard v. Commissioner of Internal Revenue, 7 Cir., 1937, 91 F.2d 880. In that case it was held that the Federal Court was not bound by a contrary decision in a circuit court of Illinois. We think that the Brainard case is to be distinguished from the one now before this Court. The state decree in that case appears to have been quite collusive. But, aside from that facet of the case, the court found that " \* \* \* appellant's profits in question were not impressed with a trust when they first came into existence." For that reason, the court held that the taxpayer was for a period of time sole owner of the funds taxed. He was thus subject to Federal taxation. Furthermore, the Brainard case concerned taxation of trust income and was not confronted with the problem now before this Court. That the Federal government is bound in some cases by the determination of property rights in state courts has been held in Uterhart v. United States, 240 U.S. 598, 36 S.Ct. 417, 60 L.Ed. 819; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, and Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119. Gallagher v. Smith, 3 Cir., 223 F.2d 218, contains an excellent discussion of the types of cases wherein the government is or is not bound by state court decisions.

The government claims that the state court should have given the widow a lesser amount because that share should have felt the impact of Federal estate taxes. But the Federal taxing authority has no right to determine what a state probate court should determine with regard to property rights. The state court

was admittedly in error in its decision, but that cannot now be corrected. The state court in determining the widow's share of the estate has in effect decided what amount of money is subject to Federal estate taxes.

The government says that it was not represented before the probate court. We see no reason why it should have been. Congress left the question of the amount of the marital deduction, if it qualified, to the state courts. In some states the Federal government gets a greater amount to levy taxes on, in some states less. That determination has been left to the state courts.

There is authority for the proposition that a consent decree is not binding on the Federal government because it is collusive. Be that as it may, we find that adverse interests were represented here. The question of whether or not the widow's share should bear the brunt of Federal estate taxes had not been determined by the Supreme Court in Wisconsin at that time. If the guardian ad litem believed that a contest of the matter would be fruitless, and there was testimony to that effect, we do not believe that made the County Court decree collusive.

> "But we think that the fact that the parties all favored the same result in the state court is relevant only so far as it is evidence of collusion and should not in and of itself vitiate in the federal court such conclusive effect as the state law gives to the judgment with respect to the property rights determined by it." Gallagher v. Smith, 3 Cir., 223 F.2d 218, 225.

The guardian ad litem was appointed by the court to represent the interests of the two children. Their interests were in fact adverse to the widow's. We have no evidence on which to find that the guardian ad litem was derelict in his duty to the court and to his wards.

The government contends that the words of Section 812, (e) (1) (E) (i) "there shall be taken into account the effect which a tax imposed by this chapter * * * has upon the net value to the surviving spouse of such interest; * * *" evidence an intent on the part of Congress that the marital deduction was not to go free and clear of the burden of any part of the estate tax. We cannot agree since Congress left that problem to the states. If the government's contention were true, then the results in New York, Kentucky and Ohio would be contrary to the Federal law. This has not been contended by the government. If Congress intended the result which the government urges upon the Court, it certainly used inept language. That purpose, if such it were, could have been expressed in basic English to that effect instead of using the language "there shall be taken into account the effect," etc. The "effect" referred to must have been the *actual* effect as determined by state law and not the theoretical effect.

The government also contends that since the court did not have directly before it the question of whether the widow's share was subject to estate taxes, that it never passed on the question. However, the court must have passed impliedly on the question when it determined the meaning of Wisconsin Statutes, § 233.14 in calculating the amount of the "net estate" under that section. The court apparently did not consider Federal taxes a charge against the estate as was later held in the Uihlein case.

The only Federal case cited by the parties which bears directly on this question is Hamrick v. Pitts, D.C., 135 F.Supp. 835 and we have been unable to discover any other cases. We understand that that decision is now being appealed. Nevertheless, at least until that decision has been reversed or overruled by an appellate court, it is our opinion that it is correct.

Counsel for the plaintiffs may prepare findings of fact and conclusions of law in accord herewith and submit them to the Court within ten days. These proposed findings shall be submitted to counsel for the defendant before being filed

with the Court, and counsel for the defendant will have five days thereafter in which to make specific objections. Should there be any disagreement as to the amount of the refund due to the plaintiffs in accord with this opinion, counsel may bring the matter on for hearing.